FILED

2023 Feb-17  AM 11:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

JENNIFER KUPEC,                              )
                                             )
                 Plaintiff,                  )
                                             )
       vs.                                   )      Case No.  5:22-cv-00966-HNJ
                                             )
LLOYD AUSTIN, Secretary,                     )
Department of Defense,                       )
                                             )
                 Defendant.                  )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jennifer Kupec, an employee of the United States Department of Defense, asserts claims against Lloyd Austin, the Secretary of that Department, for gender discrimination, disability discrimination, and retaliation.  (Doc. 1).  Defendant moved to partially dismiss those claims.  (Doc. 8).

Defendant argues a time bar precludes Kupec's discrimination claims for alleged discrete acts occurring more than 45 days before her initial EEO contact in November 2020, and Kupec's retaliation claim does not state plausible grounds for relief because Kupec failed to allege a materially adverse action.  As illustrated herein, no time bar precludes Kupec's gender and disability discrimination claims.  Rather, those claims did not accrue until November 2020, when Defendant selected a non-disabled male for the position of Kingdon of Saudia Arabia Program Manager.  Moreover, Kupec's Complaint sufficiently alleges a materially adverse action to support her retaliation

claim.  Accordingly, the court will deny Defendant's motion to dismiss on both grounds.

## BACKGROUND

Jennifer Kupec began working for the Missile Defense Agency at Redstone Arsenal in Huntsville, Alabama, in 2009, as a Program Analyst, Grade Level 4.  (Doc. 1, ¶¶ 12-13).  Upon her hire, she submitted a letter from the Alabama Department of Rehabilitation Services stating she experiences depression as a long-term medical condition.  Medication controls the depression, but without medication, Kupec cannot function, perform her work, or "maintain high cognitive performance for optimal and effective functioning of her cognitive capabilities and executive functions."  (*Id.* ¶¶ 14-18).  In 2019, Kupec discussed her disability with Laura DeSimone, Director of Acquisition; Steve Stegman, Director of Acquisition Support; Sean Williamson, Deputy Program Manager; and Major General Garrant.  (*Id.* ¶ 19).

During the pertinent time periods, Kupec worked as the Special Projects and Foreign Military Sales (FMS) Official for the Terminal High Altitude Area Defense (THAAD) Office.  (*Id.* ¶ 22).  Sean Williamson, a male, served as Kupec's first-line supervisor.  Colonel Camilla White, a female and the THAAD Project Manager, served as Kupec's second-line supervisor.  (*Id.* ¶¶ 20-21).

Kupec's job duties encompassed "'all things' involving FMS THAAD, including developing an executable United Arab Emirates and Kingdom of Saudi Arabia case for

the THAAD Weapon System from 2012 to November, 2018." (*Id.* ¶ 23). Between November 26, 2018, and December 2020, Kupec served as THAAD's Acting Program Manager for the Kingdom of Saudi Arabia, a newly created position. (Doc. 1, ¶¶ 24, 26). In that role, she helped build the Kingdom of Saudia Arabia FMS Program by bearing responsibility for cost, scheduling, and performance. (*Id.* ¶¶ 25, 27).

In early 2019, the Missile Defense Agency sought to permanently fill Kupec's temporary position by soliciting applications to select a Program Manager for THAAD's Kingdom of Saudia Arabia program. (*Id.* ¶ 28). To that end, the Agency convened a Selection Panel consisting of the following three members: (1) Shannon Womack, a male and the THAAD Project Office Director of Acquisition; (2) Jeffrey Cullen, a male and the Chief of Staff for International Affairs; and (3) Rene Oyler, a female and the Director of Operations for the Kingdom of Saudia Arabia Task Force. (*Id.* ¶ 30). All panel members possessed experience in both FMS and THAAD. (*Id.* ¶ 31).

The panel received 74 applications for the Program Manager position, including one from Kupec. The panel members reviewed and rated all the resumes, selected 12 candidates to interview, and eventually conducted eight interviews as four candidates declined interviews. (*Id.* ¶¶ 29, 32-35). The panel selected Kupec as the top interviewee and recommended her for the position. However, Laura DeSimone, a female who served as the Selecting Official, recommended re-advertising the position rather than

3

selecting Kupec.  (Doc. 1, ¶¶ 36-37).

DeSimone exhibited a history of selecting male applicants for positions, and she knew about a letter from the Kingdom of Saudi Arabia requesting that Reid Vander Schaaf, a non-disabled male, receive the position.  (*Id.* ¶¶ 39-40, 132).  However, Vander Schaff did not enjoy eligibility for the position at the time of the 2019 posting, as he retired from military service in September 2018, and the position required a one-year "cooling off period" after military retirement.  (*Id.* ¶ 42).  In addition, "[t]he Kingdom of Saudia Arabia has a publically [sic] observable history of discriminatory attitudes against females."  (*Id.* ¶ 41).

When Kupec ascertained she did not receive the position in 2019, she requested a meeting with DeSimone; during the meeting, DeSimone stated she did not select Kupec because of her communication skills.  (*Id.* ¶¶ 43-44).  However, while Kupec served as Acting Program Manager, she always received outstanding performance evaluations, and she did not receive any negative feedback regarding her communication skills.  (*Id.* ¶ 45).  Kupec requested a follow-up meeting with DeSimone, but that meeting never occurred.  (Doc. 1, ¶ 46).

On January 14, 2020, the Missile Defense Agency again solicited applications for the Program Manager position.  The agency did not inform Kupec about the renewed solicitation, but she nonetheless became aware and applied for it, along with 90 other individuals.  (*Id.* ¶¶ 47-49).  The agency convened a new, all-male Selection Panel

4

consisting of: (1) Colonel Anthony Meeks, DA Deputy Director; (2) Eddie Baker, Acquisition Lead for Ground-Based Weapon Systems; and (3) Michael Meutjer, THAAD Chief Engineer. (*Id.* ¶¶ 50-51). The panel chair reported directly to DeSimone. (*Id.* ¶ 56). The members of the 2020 panel possessed limited knowledge in FMS, even though the Program Manager position required experience in both FMS and Program Management, and agency guidelines required a selection panel to include diverse subject matter experts. (*Id.* ¶¶ 52-55).

During July 2020, the panel interviewed six applicants, including Kupec. (*Id.* ¶ 57). At that time, Kupec possessed 14 years of experience in FMS, including six years with THAAD and service as both Deputy Program Manager for United Arab Emirates and Acting Program Manager for the Kingdom of Saudi Arabia. (Doc. 1, ¶ 61). During her interview, Kupec experienced difficulty hearing, and she asked to reschedule the interview. The Complaint does not state whether the panel granted that request. Kupec drew the conclusion during the interview that she was wasting her time. (*Id.* ¶¶ 58-59).

In November of 2020, the panel selected Vander Schaaf for the Kingdom of Saudi Arabia Program Manager position and scheduled his start date for December 7, 2020. (*Id.* ¶ 60). Kupec alleges the Missile Defense Agency portrays a history of placing males in positions without competition. (*Id.* ¶ 85). Vander Schaaf possessed very limited knowledge of FMS, and he maintained experience with only one component of THAAD weapons: radars. (*Id.* ¶¶ 63-64). In contrast, Kupec possessed experience in

5

all aspects of THAAD *other than* radar, and she harbored more experience than Vander Schaaf in both FMS and THAAD weapon systems.  (*Id.* ¶¶ 62, 65).  Kupec's evaluations depicted she possessed extensive leadership skills, and she maintained experience in Program Management through her position as Acting Program Manager.  (Doc. 1, ¶¶ 66-67).

In 2017, Kupec disagreed with a brief Vander Schaaf wrote for a command structure that would place him in a position over all Kingdom of Saudi Arabia cases, as she believed the placement did not comport with the Charter for the project.  (*Id.* ¶¶ 68-69).

After Vander Schaaf received the Program Manager position, Kupec voiced concerns over her non-selection to her immediate supervisors.  Then, on November 16, 2020, she shared those concerns with Vice Admiral John Hill, the Director.[1]  During the conversation, Hill did not express any concerns about Kupec's professionalism.  (*Id.* ¶¶ 71-72).

Sometime in "late November, 2020," Kupec contacted the EEO office, and Stegman knew about the contact at the time.  (*Id.* ¶¶ 4, 73-74).  On December 2, 2020, Kupec initiated an informal EEO complaint that contained facts "such that Kupec was easily identifiable as the complainant."  (*Id.* ¶¶ 5, 75-76).

---

[1] The Complaint does not specify whether Hill served as Director of THAAD, the Missile Defense Agency, or some other entity.

Also on December 2, 2020, Stegman removed Kupec from the position of Acquisition Manager Functional Lead because she had not been attending meetings. (*Id.* ¶¶ 78-79). Kupec alleges she only attended meetings when the agenda addressed FMS. (Doc. 1, ¶ 80).

On December 17, 2020, Williamson issued Kupec a letter of counseling claiming Kupec did not address issues with her supervisors, and she expressed her concerns in a "vociferous" manner. Kupec denies both of those claims. (*Id.* ¶ 81). Williamson informed Kupec that Major General Garrant instructed him to issue the counseling letter. (*Id.* ¶ 82).

On January 7, 2021, Major General Garrant, with no reason, discontinued Kupec's attendance at the Ground Based Weapons Systems weekly meeting. (*Id.* ¶ 83-84).

On March 12, 2021, Kupec filed a formal complaint with the EEO agency. The EEO agency issued a Final Decision on May 5, 2022, and Kupec filed this case on August 2, 2022, less than 90 days later. (*Id.* ¶¶ 6-7).

## DISCUSSION

Kupec's gender discrimination claim arises under Title VII of the Civil Rights Act of 1964, *et seq.*, as amended, and her disability discrimination claim arises under the

Rehabilitation Act.[2]  Though the Complaint does not so specify, Kupec's retaliation claim presumably arises under both statutes, as she claims she suffered retaliation after complaining about gender and disability discrimination.[3]

## I.   No Time Bar Precludes Kupec's Gender and Disability Discrimination Claims, Which Did Not Accrue Until November 2020 When Defendant Selected Vander Schaaf for the Position of Kingdom of Saudi Arabia Program Manager

Under both Title VII and the Rehabilitation Act, an aggrieved federal employee must press a discrimination claim pursuant to the administrative complaint and appeals process provided in the Equal Employment Opportunity Commission ("EEOC") regulations.  *See* 42 U.S.C. § 2000e-16(c); 29 U.S.C. § 794a(a)(1) (incorporating by

---

[2] The Rehabilitation Act prohibits federal and private employers from discriminating against employees on the basis of a disability.  29 U.S.C. § 701, *et seq.*, as amended.

[3] Kupec's Complaint in this action does not specify the types of discrimination she alleged in her EEO complaint.  However, Defendant attached a copy of the March 12, 2021, EEO complaint to its motion to dismiss.  The EEO complaint asserts Defendant discriminated against Kupec on the basis of sex, disability, and reprisal for previous EEO activity.  (Doc. 8-1, at 1).

Normally, the court may not consider matters outside the pleadings without converting a motion to dismiss into a motion for summary judgment and providing the parties an opportunity to submit pertinent material.  Fed. R. Civ. P. 12(d).  However, a court may consider "documents attached to a motion to dismiss . . . without converting the motion into one for summary judgment if they are central to the plaintiff's claim and their authenticity is not challenged."  *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020).  Here, no party has challenged the authenticity of the EEO documents, and the documents present necessary prerequisites to Kupec's ability to file suit in federal court.  *See Booth v. City of Roswell*, 754 F. App'x 834, 837 (11th Cir. 2018) (Conversion not required when the plaintiff "referred to the EEOC charge in his complaint, as amended; it was central to whether his claims were viable; and no one disputed its authenticity.");  *Equal Emp. Opportunity Comm'n v. Austal USA, LLC*, 389 F. Supp. 3d 1015, 1018 (S.D. Ala. 2019) (citations omitted) ("Courts have found that an EEOC charge attached to a motion to dismiss may be considered where it was central to a complaint brought by a charging party and the authenticity of the charge was not disputed.").

reference the "remedies, procedures, and rights" prescribed in § 2000e-16 of the Civil Rights Act of 1964); 29 C.F.R. § 1614.103(a).

The employee must first attempt to resolve his or her claim through informal counseling.  29 C.F.R. § 1614.105(a).  He or she "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  *Id.* § 1614.105(a)(1).  The agency may extend the 45-day time limit if

> the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known [*sic*] that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

*Id.* § 1614.105(a)(2).

If informal counseling does not resolve the matter, or if counseling does not conclude within the prescribed time period, the Counselor will inform the employee of his or her right to file a discrimination complaint.  *Id.* §§ 1614.105(d), (e), (f).  The employee must file the complaint within 15 days of the Counselor's notice.  *Id.* § 1614.106(b).

Defendant argues Kupec did not timely initiate EEO contact pursuant to these

procedures.[4]  That argument challenges this court's jurisdiction.  "Federal courts are courts of limited jurisdiction" and, as such, possess the power to hear cases only as authorized by the Constitution or United States' laws.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case."  *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  In addition, federal courts possess "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

Federal Rule of Civil Procedure 12(b)(1) permits a district court to dismiss a case for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  The plaintiff bears the burden of persuasion on establishing the court's subject matter jurisdiction.  *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

---

[4] Kupec points out the EEO agency denied as untimely her discrimination claim based upon the 2019 selection.  (Doc. 8, at 2-5; Doc. 8-2).  Though, as discussed in the previous footnote, the court may consider the EEO documents for the procedural history of Kupec's claims, the Agency's EEO decision does not bind this court, which must conduct a *de novo* review.  *Ellis v. England*, 432 F.3d 1321, 1324 (11th Cir. 2005) ("[A] federal employee unhappy with the administrative decision may bring a claim in the federal district court and obtain the same *de novo* review that a private sector employee receives in a Title VII action pursuant to 42 U.S.C. § 2000e-16(c).").

The Eleventh Circuit establishes particular modes of review for Rule 12(b)(1)

challenges to subject matter jurisdiction:

> [A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint. If the challenge is facial, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised . . . Accordingly, the court must consider the allegations in the plaintiff's complaint as true . . .
>
> A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion . . . Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered. Furthermore, . . . the district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)

(citing, *inter alia*, *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981);[5] *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)) (internal quotation marks and alterations omitted).

Therefore, a factual challenge to subject matter jurisdiction typically permits a

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

"trial court . . . to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson*, 645 F.2d at 412-13 (quoting *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3rd Cir. 1977)).  No presumptive truthfulness would attach to a plaintiff's claims, and "the existence of disputed material facts [would] not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Mortensen,* 549 F.2d at 891); *see also Lawrence*, 919 F.2d at 1529.

As germane to this case, a federal employee must exhaust his or her administrative remedies as a "jurisdictional prerequisite" to filing a lawsuit under Title VII or the Rehabilitation Act.  *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999); *accord Thomas v. Nicholson*, 263 F. App'x 814, 815 n.1 (11th Cir. 2008) (per curiam) (citing *Crawford*, 186 F.3d at 1326) ("It is well-settled that, as a jurisdictional prerequisite, a federal employee must timely exhaust administrative remedies prior to filing an employment discrimination suit under Title VII."); *Brown v. Snow*, 440 F.3d 1259, 1263 (11th Cir. 2006) (quoting *Crawford*, 186 F.3d at 1326) ("[O]ur case law establishes that '[a] federal employee must pursue and exhaust her administrative remedies as a jurisdictional prerequisite to filing a Title VII action . . . .'") (second alteration in original); *see Doe v. Garrett*, 903 F.2d 1455, 1461 (11th Cir. 1990) (quoting *Milbert v. Koop*, 830 F.2d 354, 357 (D.C. Cir. 1987)) ("[P]rivate actions against federal government employers under the [Rehabilitation] Act . . . must satisfy 'the requirement of

exhaustion of administrative remedies in the manner prescribed by section [794a(a)(1)] and thus by Title VII.'") (second alteration in original).

Accordingly, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction constitutes the proper vehicle for challenging a plaintiff's failure to exhaust administrative remedies in the federal employment sector. *See Brown*, 440 F.3d at 1263 ("We have applied the exhaustion requirement to affirm dismissals for lack of subject matter jurisdiction when the employee did not provide information requested by the investigating agency."); *Swauger v. Dep't of Def. - Def. Intel. Agency*, 852 F. App'x 393, 396 (11th Cir. 2021) (citations omitted) ("When a complaint under Title VII is time-barred for failure to exhaust administrative remedies, it must be dismissed for lack of subject-matter jurisdiction."); *Hawkins v. Esper*, 5:18-cv-00127-AKK, 2019 WL 5963520, at *5 (N.D. Ala. Nov. 13, 2019) (the plaintiff failed to exhaust his administrative remedies pursuant to Title VII, thus precluding the court's subject matter jurisdiction over his claims); *Dillard v. Runyon*, 928 F. Supp. 1316, 1325 (S.D. N.Y. 1996) ("If a [Title VII] claimant has not met the filing requirements, . . . there is no waiver of sovereign immunity, and accordingly, no subject matter jurisdiction. . . . Accordingly, defendant's motion here properly is characterized as one pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss for lack of subject-matter jurisdiction."); 5B Charles Alan Wright, Arthur R. Miller & May Kay Kane, Federal Practice and Procedure § 1350 (3d ed. 1995) ("[T]he Rule 12(b)(1) motion to dismiss for a lack of subject matter jurisdiction . . . may be

appropriate when the plaintiff has failed to exhaust administrative procedures that have been established, typically by statute, as a prerequisite to his bringing suit.").

Moreover, a plaintiff's failure to comply with administrative filing deadlines constitutes a failure to exhaust administrative remedies, notwithstanding a plaintiff's timely filing of a complaint in federal court. *See Hall v. Potter*, No. 06-CV-5003 (JFB)(AKT), 2009 U.S. Dist. LEXIS 18955, at *18-19 (E.D.N.Y Mar. 4, 2009) ("Where a plaintiff fails to appeal a decision to the EEOC within the thirty-day statutory limit but does ultimately file a civil action within ninety days of the EEOC's final determination of that untimely appeal, the timely filing of the federal court action does not cure that plaintiff's original failure to abide by the requisite filing periods."). The plaintiff bears the burden of proving he exhausted his administrative remedies. *See Crawford*, 186 F.3d 1322; *OSI, Inc.*, 285 F.3d at 951 ("In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists.").

Kupec does not dispute that she failed to initiate EEO contact within 45 days of the decision not to award her the position in 2019.[6]  Even so, she argues her gender- and disability-based discrimination claims should survive because "the *discriminatory act*,

---

[6] The Complaint does not state the precise date on which DeSimone chose to re-advertise the position rather than awarding it to Kupec, but she undisputedly effected that option sometime in 2019, and Kupec initiated EEO contact in late November 2020, much more than 45 days following any date in 2019.

the selection of a male for the position, did not occur until November, 2020." (Doc. 15, at 4) (emphasis in original).[7]  That argument persuades the court.  The administrative regulations required Kupec to "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 CFR § 1614.105(a)(1).  "Ordinarily, a limitations period commences when the plaintiff has a complete and present cause of action. . . .  A cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief."  *Green v. Brennan*, 578 U.S. 547, 554 (2016) (cleaned up, citations omitted).  Based upon Kupec's remonstrations, her 45-day limitations period did not become complete and present until the effective date of the personnel action at issue, i.e., Vander Schaaf's selection for the Program Manager position, as she could not have initiated the administrative process to obtain relief until that date.

---

[7] Kupec partially couches her argument in terms of the doctrine of equitable tolling, as she argues "she was unaware of the discrimination" before that date.  (Doc. 15, at 4).  The doctrine of equitable tolling suspends the limitations period for a claim until "the facts supporting a cause of action became apparent or should have become apparent to a reasonably prudent person with concern for his or her rights." *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1267 (11th Cir. 2003), *certified question answered sub nom. Byrd v. Dillard's, Inc.*, 892 So. 2d 342 (Ala. 2004).  However, as Kupec's exhaustion of administrative remedies presents a jurisdictional prerequisite, not a procedural one, equitable tolling does not apply. *See Swauger v. Dep't of Def. - Def. Intel. Agency*, 852 F. App'x 393, 396 (11th Cir. 2021) (citing *F.E.B. Corp. v. United States*, 818 F.3d 681, 685 & n.3 (11th Cir. 2016); *Wong*, 575 U.S. at 407-10, 415-16) ("Equitable tolling is not available for a jurisdictional time bar.").  Principally, this case involves accrual of Kupec's discrimination claims, and "[w]e must distinguish between the *accrual* of a plaintiff's claim and the *tolling* of the statute of limitations." *Fedance v. Harris*, 1 F.4th 1278, 1285 (11th Cir. 2021) (quoting *Holland v. Florida*, 560 U.S. 631, 647 (2010) (cleaned up, emphasis in original)).

Therefore, Kupec's discrimination claims did not accrue in 2019 when Defendant declined to heed the first interview panel's recommendation to select Kupec for the Program Manager position.  As insinuated by Kupec, Defendant did not exercise *any* selection decision at that time.  Hence, in the circumstances of this case, and as denoted by Kupec, Defendant did not render a *discriminatory* selection at that time.  *See Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) (emphasis in original) ("Unfair treatment, absent discrimination based on race, sex, or national origin, is *not* an unlawful employment practice under Title VII."); *Woods v. Waste Pro of Fla., Inc.*, No. 21-12610, 2022 WL 2288683, at *2 (11th Cir. June 24, 2022) ("To establish a Title VII discrimination claim, the plaintiff must show . . . the employer's discriminatory animus towards the employee based on the employee's protected characteristic . . . ."); *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1334 (11th Cir. 2022) (citation omitted) (alteration in original) ("To establish a prima facie case of discrimination under the [Rehabilitation] Act, an individual must show that . . . he was subjected to unlawful discrimination as the result of his disability."); *Terrell v. McDonough*, No. 8:20-CV-64-WFJ-AEP, 2021 WL 4502795, at *5 (M.D. Fla. Oct. 1, 2021), *motion for relief from judgment denied*, No. 8:20-CV-64-WFJ-AEP, 2022 WL 523606 (M.D. Fla. Feb. 22, 2022) (Plaintiff "did not suffer differential treatment" when "no one was selected" after the reposting of a position.).

Rather, Kupec's discrimination claims accrued in November 2020, when

Defendant selected Vander Schaaf, a non-disabled male, for the Program Manager position. (*See* Doc. 15, at 4 ("[T]he *discriminatory act*, the selection of a male for the position, did not occur until November, 2020.") (emphasis in original)).   Indeed, Kupec's Complaint portrays this understanding:  her two counts for the failure-to-promote claim integrate the 2019 and 2020 events, including the selection of Vander Schaff in 2020 for the position.

Defendant does not challenge the timeliness of Kupec's administrative complaint addressing her non-selection for the position in November 2020, as the Agency rendered the selection and Kupec initiated EEO contact in the same month. Thus, Kupec unquestionably initiated EEO contact within 45 days of her 2020 non-selection.   Therefore, the time bar does not preclude Kupec's gender and disability discrimination claims, which did not accrue until November 2020.   Accordingly, the court will deny Defendant's motion to dismiss those claims in that regard.[8]

## II.   Kupec's Complaint Sufficiently Alleges a Materially Adverse Action to Support Her Retaliation Claim

Defendant's entreaty to dismiss Kupec's retaliation claim invokes Federal Rule

---

[8] The court notes that even if the 2019 decision constituted a separate discrete act, facts surrounding the 2019 decision my bear relevance as background information for the claims about the 2020 decision. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.  Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

of Civil Procedure 12(b)(6), which permits dismissal of a claim for failure to state a claim upon which the court can grant relief.  To assess a motion to dismiss under that rule, courts must first take note of the elements a plaintiff must plead to state the applicable claims at issue.  *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).

After establishing the elements of the claims at issue, the court identifies all well-pleaded, non-conclusory factual allegations in the complaint and assumes their veracity.  *Id.* at 679.   Well-pleaded factual allegations do not encompass mere "labels and conclusions," legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action.   *Id.* at 678 (citations omitted).  In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable inferences in the plaintiff's favor.  *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

Third, a court assesses the complaint's well-pleaded allegations to determine if they state a plausible cause of action based upon the identified claim's elements.  *Iqbal*, 556 U.S. at 678.  Plausibility ensues "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the analysis involves a context-specific task requiring a court "to draw on its judicial experience and common sense."   *Id.* at 678, 679 (citations omitted).  The plausibility standard does not equate to a "probability requirement," yet it requires more than a "mere possibility of misconduct" or factual statements that are

"merely consistent with a defendant's liability."  *Id.* at 678, 679 (citations omitted).

Kupec alleges Defendant retaliated against her after she contacted the EEO office in late November 2020 to complain about her non-selection for the Project Manager position.

Title VII's anti-retaliation provision provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. §2000e-3(a).  Similarly, the Rehabilitation Act adopts the standards and remedies of the Americans with Disabilities Act, which provides:  "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a); *see also* 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate

to employment.").

To assert a viable claim under either statute, a plaintiff must plead facts demonstrating (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) some causal relation exists between the two events. *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022) (quoting *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (*en banc*)) (Title VII); *see also Solloway v. Clayton*, 738 F. App'x 985, 988 (11th Cir. 2018) (citation omitted) ("[W]e assess retaliation claims under the Rehabilitation Act using the same framework as Title VII retaliation claims.").

Defendant argues Kupec has not pleaded sufficient facts to demonstrate she suffered a materially adverse action. Such an action manifests if it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Thus, "[t]he challenged action must be materially adverse from the standpoint of a reasonable employee." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 978 n.52 (11th Cir. 2008), *abrogated on other grounds by Ashcroft*, 556 U.S. 662. Consistent with Supreme Court precedent, the Eleventh Circuit prescribed a "liberal view of what constitutes" a materially adverse action for retaliation claims, pursuant to which an employee must simply demonstrate the employer's conduct "might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one." *Crawford v. Carroll*, 529 F.3d 961, 974

20

(11th Cir. 2008) (citing *Burlington*, 548 U.S at 68).

Even so, the employee must experience a materially adverse harm rather than a trivial one. *Burlington,* 548 U.S. at 68 ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms. . . . An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.") (emphasis in original). In assessing materiality, the court must consider the context of the adverse action, as "any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69. "'The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.'" *Id.* (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81-82 (1998)). For example:

> A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. . . . A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.

*Burlington*, 548 U.S at 69.

Binding authority dictates that materially adverse actions may include:

21

- a reassignment of job duties, if it results in more arduous or less desirable duties or a loss of prestige, *id.* at 70-71;

- a negative performance review, if it may result in reduced pay, responsibilities, or other benefits, *Crawford*, 529 F.3d at 974; *see also Manley v. DeKalb Cnty., Georgia*, 587 F. App'x 507, 513 (11th Cir. 2014); and

- "[w]ithholding a position that an employee would otherwise receive under company policy." *Chapter 7 Tr. V. Gate Gourmet, Inc.*, 683 F.3d 1249, 1259 (11th Cir. 2012).

Recent unpublished Eleventh Circuit authority also instructs that threats of disciplinary action, imposition of additional work hours, disadvantageous alteration of an employee's work schedule, and subjecting an employee to "fit for duty" assessments and drug testing may dissuade a reasonable employee from engaging in protected activity. *Moore v. City of Homewood*, No. 21-11378, 2023 WL 129423, at *12 (11th Cir. Jan. 9, 2023).

In all contexts, the inquiry proceeds on a subjective, contextual, and fact-intensive basis. *See Burlington*, 548 U.S. at 69 ("Context matters."). In addition, courts should collectively consider the total weight of an employer's adverse actions in assessing material adversity. *Moore,* 2023 WL 129423, at *12 ("It is not enough . . . to view the employer's actions in isolation. We must view them together, and – in that light – decide whether they might dissuade a reasonable employee from engaging in

protected activity."); *see also Harris v. Fla. Agency for Health Care Admin.*, 611 F. App'x 949, 952 (11th Cir. 2015) (citing *Shannon v. BellSouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)) ("[A] set of actions may constitute an adverse employment action when considered collectively, even though some actions do not rise to the level of an adverse employment action individually.").

Kupec's Complaint alleges Defendant retaliated after notification of her EEO complaint by: (1) removing her name from an informal attendance roster on a briefing chart for a December 2, 2020, meeting; (2) removing her from the position of Acquisition Manager Functional Lead on December 2, 2020; (3) issuing her a December 17, 2020, letter of counseling that falsely claimed she did not address issues with supervisors and expressed her concerns vociferously; and (4) discontinuing her attendance at a Ground Based Weapons Systems weekly meeting on January 7, 2021.

Excluding Kupec from meetings, removing her from a leadership position, and issuing her a letter of counseling *may* constitute materially adverse actions *if* such actions affected her pay, future career prospects, or other benefits; cost her prestige; or resulted in less favorable job duties. Discovery will provide the facts necessary to evaluate those context-specific assessments. At the pleading state, Kupec has alleged sufficient facts to demonstrate she suffered materially adverse actions as a result of Defendant's

discriminatory motive.[9]

Defendant argues Kupec cannot sustain a retaliation cause of action because she persisted in filing a formal EEO claim on March 12, 2021, notwithstanding all of the retaliatory actions she allegedly endured.   Therefore, according to Defendant, Defendant's actions did not, in fact, dissuade Kupec from pursuing relief.  (Doc. 8, at 14-15) ("Plaintiff did, in fact, file an EEO claim after these alleged incidents on March 12, 2021.").  Applicable law does not support Defendant's argument.  The court must perform an objective assessment of whether adverse actions "could well dissuade a reasonable worker from" pursuing a discrimination complaint, not a subjective inquiry into whether such actions actually dissuaded the individual plaintiff.  *Burlington,* 548 U.S. at 57; *see also Davis*, 516 F.3d at 978 n.52 ("The challenged action must be materially adverse from the standpoint of a reasonable employee.").

The objective inquiry "is judicially administrable," and it "avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings."  *Burlington*, 548 U.S. at 68-69.  Moreover, foreclosing all retaliation claims when the employer's adverse action failed to deter the employee from seeking relief would unfairly reward the employer for its retaliation and

---

[9] Defendant does not dispute that Kupec's EEO complaint constituted protected activity, or that Kupec alleged a sufficient causal connection between the filing of the complaint and the alleged adverse actions.

effectively preclude all retaliation lawsuits.  The authors of Title VII and the ADA surely did not intend such a result.  *See Quarles v. United States*, 139 S. Ct. 1872, 1879 (2019) (citations omitted) ("We should not lightly conclude that Congress enacted a self-defeating statute.").  The Supreme Court also could not have intended its decision in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) would bear such consequences:  the plaintiff in that case submitted an EEOC charge and filed suit in federal court after the employer allegedly took retaliatory actions, yet the Supreme Court evaluated the employer's conduct under the objective standard of a reasonable employee.  *Id.* at 58-59, 68-73.  As the Court observed, the "antiretaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms," *id* at 68 (citation omitted), and that an aggrieved employee achieves such access does not categorically render the accomplishment unencumbered.  *See also Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011) (holding in a retaliation case that "the term 'aggrieved' in Title VII incorporates [the zone-of-interests] test, enabling suit by any plaintiff with an interest 'arguably sought to be protected by the statute'" (citation omitted)).

In summary, as Kupec has adequately alleged retaliation claims under Title VII and the Rehabilitation Act, the court will deny Defendant's motion to dismiss those claims.

## CONCLUSION AND ORDER

In accordance with the foregoing, the court **DENIES** Defendant's motion to dismiss.   Kupec's claims for discrimination based upon her failure to receive the Program Manager position in 2020, and for retaliation, shall proceed to discovery.

**DONE** and **ORDERED** this 17th day of February, 2023.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE